FILE COPY

DEC 2009

JB

No FEE
-IFP-

VIRGINIA:

IN THE VIRGINIA COURT OF APPEALS

IN RE: OLANDO LEE TRENT,
            petitioner / movant.

PETITION FOR WRIT OF MANDAMUS OR MOTION FOR
WRIT OF HABEAS CORPUS

## PARTIES

2711-09-3

1.   COMES NOW your petitioner and movant ( hereinafter "movant")
who is confined under the name and number Kevin Johnson, #
185492 ~~Olando Lee Trent~~ within the Virginia Department of Corrections (VADC)
at Red Onion State Prison (ROSP), P.O. Box 1900, Pound, Va. 24279.
Movant's legal name is Olando Lee Trent, however, all correspondence
related to this case must be mailed to him using only the name
Kevin Johnson, # 185492 ~~Olando Lee Trent~~, because mail sent to him which is
addressed in his legal name is often not delivered to him by prison
officials.
2.   This petition is brought against Wise County Circuit Court (WCC)
clerk J. Jack Kennedy, Jr., and WCC Judges Joseph Carrico and
Tammy McElyea in relation to ~~the~~ criminal proceedings pursuant to
which movant has been retained in unlawful custody, and WCC
criminal proceedings in which these judges remanded him to
unlawful imprisonment, styled Commonwealth of Virginia v. Kevin
Johnson, Case No. F08-688. The motion made hereby is brought
against the WCC as/ and his official custodian.

## JURISDICTION

3.   This petition and motion is brought pursuant to this Appeals
Court's original jurisdiction. See, Va. Sup. Ct. R. 5A:5(a).

## CHARGE AND INTRODUCTION

4.   Movant charges that the WCC clerk's office has a
ministerial duty to file a Motion for Release from confinement (MRC)
which he submitted to that Court for filing in and against the
WCC and the ~~WCC~~ WCC judges have a ministerial duty to promptly
hear and decide said MRC and to grant his immediate release
from confinement. He charges that these judges exceeded their
lawful authority in remanding him to unlawful confinement in Wise
County and making him a subject of the F08-688 proceedings to
effect such imprisonment
5.   Movant thus seeks a writ of mandamus from this Appeals
Court ordering the WCC to file, hear, decide and grant the MRC
and grant his immediate discharge from imprisonment or alternatively
this Appeals Court should grant him a writ of habeas corpus and
his immediate release.

## STATEMENT OF FACTS

6.   Movant has been imprisoned since June 4, 1990 with no
criminal charges nor convictions filed, found nor adjudicated
against him. He has never been convicted of a crime. He has been

imprisoned in Wise County since September 1998.

7. On December 8, 2008 movant was brought before the WCC Judge Carrico and charged and arraigned as a defendant in the F08-688 WCC proceeding. In that case an indictment dated November 19, 2008 charged that one Kevin Johnson was in possession of a weapon on or about September 5, 2008 while in jail. Movant was never served with process nor the indictment in that F08-688 case, and persisted throughout the proceedings that his name is Olando Lee Trent and not Kevin Johnson, that he is not the person named in said indictment and is unlawfully imprisoned. He elected to proceed pro se.

8. At that one tenus appearance Judge Carrico proceeded against him as though he were the charged Kevin Johnson, denied him bail or release, appointed him standby counsel and remanded him to confinement at Red Onion State Prison. A plea and motions date was set for February 3, 2009 and trial for March 10, 2009.

9. On January 29, 2009 movant filed a Motion to Vacate (MTV) in that case challenging his imprisonment as unlawful per se because he'd never been charged with nor convicted of any crimes and sought to vacate as void as to him criminal convictions falsely imputed against him, but which were adjudicated against someone else. See Exhibit A.

10. At the February 3, 2009 motions and plea hearing Judge Carrico denied the MTV on grounds that the WCC did not have jurisdiction to invalidate judgments of convictions entered by courts outside Wise County. Because of lack of meaningful avenues of performing legal research, and officials at his place of confinement barring his use of the institution's law library and taking his personal legal property, he did not know how otherwise to procedurally challenge his imprisonment. However, the WCC, the Wise County prosecuting attorney's office, etc. all conceded that movant has never been convicted of a crime and that his custody in Wise County, although he is confined at ROSP, constitutes jail custody. Movant was remanded back to said custody on that date with no plea entered to the charge in that case.

11. Movant appeared before the WCC several times following that one tenus appearance in the F08-688 case, with Judge Carrico or McElyea presiding. He continuously protested himself not to be a proper party defendant to that case and repeatedly attempted to obtain his discharge. One such hearing occurred on April 8, 2009. See Exhibit B. At each hearing his MTV was denied in the context of the F08-688 case although several times he tried to pursue his discharge in an independent civil context.

12. On June 10, 2009 during one tenus appearance in the F08-688 case, and with no prior notice (written nor otherwise) to movant, the Wise County Commonwealth Attorney moved to voluntarily dismiss the F08-688 case, to which movant protested he should be discharged from and not remanded back to imprisonment because unlawfully confined with no convictions and no charges found or filed against him as required by Va. Code § 19.2-242. Also that he could not be again remanded to confinement in connection with or as a result of his appearance before the court one tenus in that case on that date. His objections were overruled, he was compelled to endorse the dismissal order entered that

day as though a proper party, and based upon that one term's appearance he was remanded by Judge McElyea back to ROSP and confinement. On June 18, 2009 he moved to vacate that June 10, 2009 order as void to the extent it was used to remand him to illegal confinement despite that it was allegedly dismissing the F08-688 case. No order has ever been entered ruling on the June 18, 2009 motion to vacate and relieve movant of the June 10, 2009 dismissal and remand order.

13. On September 22, 2009 movant mailed a letter to the WCC clerk and Judge, moving to initiate an independent civil proceeding and to be heard ore tenus immediately, upon the relevant facts of the MTV and further clarified thereby. See Exhibit C.

14. To date movant has not been heard upon the said requested proceeding as set out in Exhibit C, which proceeding was apparently not filed by the Clerk.

15. Movant has not been able to and cannot litigate this matter by mail because officials often will not permit him to receive mail sent to him in his actual name.

16. Movant wishes to have his entitled discharge granted. Pursuant to Va. Code § 8.01-280 movant states that he believes the foregoing to be true.

## BRIEF IN SUPPORT

### I. MANDAMUS STANDARD OF REVIEW

Mandamus lies to compel a public official to perform a ministerial duty. A ministerial duty is one compelled by law which permits no exercise of discretion on part of said official. Richland Med. Assn. v. Comm., 230 Va. 384, 386-87 (1985).

#### A. CLERK'S MINISTERIAL DUTY TO FILE PAPERS

Court clerks have a ministerial duty to file papers tendered to them as requested, and cannot pass upon the validity of papers presented for filing, and mandamus jurisdiction lies to compel or enforce such filings. Rinehart & Dennis Co. v. McArthur, 123 Va. 556 (1918); Burkholder v. McGraw, 63 Va. Cir. 537 (Roanoke County 2003).

#### B. COURT'S MINISTERIAL DUTY TO EXERCISE GIVEN JURISDICTION AND DECIDE ISSUES BROUGHT BEFORE THEM

Courts have a strict obligation (i.e. a ministerial duty) to exercise given jurisdiction and decide matters brought before them. A court:

" must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the Constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties a case may be attended, we must decide it if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given. The one or the other would be treason to the

Constitution. Questions may occur which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscienciously to perform our duty."

Cohens v. Virginia, 19 U.S. 264, 404 (1821); Accord. McCarthy v. Madigan, 503 U.S. 140, 146 (1996)(courts have a "virtually unflagging obligation to exercise jurisdiction given them".)

As set out in § II infra, the WCC had a duty to discharge movant. Also, his September 22, 2009 MRC merited prompt hearing and determination, where he is imprisoned in relation to criminal proceedings that are invalid as to him, and where he is entitled to immediate discharge consistent with § 19.2-242 because he was never the subject of written charges filed or found against him although imprisoned since June 4, 1990, nor was he the proper subject of the F08-688 proceedings where not named as the defendant nor served with process, nor subject to reconfinement thereunder; one should "never be by act of the court remanded to his unlawful imprisonment; for then the court should do an act of injustice in imprisoning him, de novo, against law...." Fay v. Noia, 372 U.S. 391, 404 (1963).

Furthermore, where one is imprisoned beyond a term of court following his arrest at which a grand jury meets yet returns no indictment against him, such presents a case of peculiar urgency warranting a prompt hearing and discharge. In re Esselborn, 8 F. 904 (C.C.D.N.Y. 1881). As demonstrated hereby, movant's efforts to initiate habeas corpus proceedings below on September 22, 2009 were unavailing.

## C. COURT'S MINISTERIAL DUTY TO PROTECT ~~CONSTITUTION~~ MOVANT'S FUNDAMENTAL RIGHTS

State courts have clear ministerial duties to protect litigants' constitutional rights. "A state court may not deny a federal right....." Howlett v. Rose, 496 U.S. 359, 369 (1990). Indeed, "state courts also have the solemn responsibility... to guard, enforce and protect every right granted or secured by the Constitution of the United States." Zwickler v. Koota, 389 U.S. 241, 247-48 (1967). Virginia courts also have a ministerial duty to abide by state constitutional provisions. Movant has numerous rights at issue related to his MRC and his imprisonment and being relieved thereof, which he does not and has not waived.[1]

### a. RIGHT TO BE HEARD

Under the 14th Amendment, movant has a due process right to be heard on his MRC, especially where his liberty is at stake and he is unlawfully imprisoned.

---

1. Courts must "indulge every reasonable presumption against waiver of fundamental constitutional rights and we do not presume acquiescence in the loss of fundamental rights." Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

4

"The fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U.S. 384, 394 (1914). "[T]he Court [has] read the 'property' component of the ... Due Process Clause to impose constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." Logan v. Zimmerman Brush Co., 455 U.S. 422, 429 (1982). "[T]he Fourteenth Amendment's Due Process Clause has been interpreted as preventing the states from denying potential litigants use of established adjudicatory procedures, when such an act would be the equivalent of denying them an opportunity to be heard upon their claimed rights." Id. @ 429-30. "[P]ersons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." Id. @ 430 n.5. Due process assures at a meaningful time and in a meaningful manner, proceedings appropriate to the nature of the case and which take into consideration the competing interests of the parties. Id. @ 434 and 437.

In addition to the right to be heard, due process ensures the right to an impartial trier of fact, which forbids a tribunal from trying a cause in which its own interests are at stake. In re Murchison, 349 U.S. 133, 136 (1955).

### b. RIGHT TO COURT ACCESS

Movant has a clear right to court access on his MRC, under the 14th Amendment. "[A] due process right of access to the Courts exists when fundamental interests are present and the state has exclusive control over the adjustment of the legal relationship involved." Id. @ 430. n.5.

### c. RIGHT TO PRESUMED CRIMINAL INNOCENSE

Underlying movant's MRC and this case is his right to presumed criminal innocence which his confinement in prison denies. Before any conclusive criminal imputations may be made against anyone," the due process clause [requires] that the state prove ... guilt ... beyond a reasonable doubt." Addington v. Texas, 441 U.S. 418, 423 (1979). The Court has "declined to allow a state's civil labels or good intentions to obviate the need for criminal due process safeguards ...." Id. @ 427. On the overriding presumption of criminal innocence, see Sandstrom v. Montana, 442 U.S. 510 (1979). Absent a determination of movant's motion he is subject to ongoing false criminal stigma.[2]

### d. RIGHTS AGAINST UNLAWFUL SEIZURE

Also underlying his discharge motion, is movant's 4th Amendment right against unlawful seizure. A "seizure" triggering

---

2. Movant is also to appear and testify and/or submit affidavits in WCC criminal proceedings on behalf of several RO&P prisoners who have pending criminal charges, in which cases he will be subject to false criminal stigma and impeachment. Va. Code §19-2-269.

5

4th Amendment protections occurs when government actors have, "by means of physical force or show of authority... in some way restrained the liberty of a citizen." Terry v. Ohio, 329 U.S. 1, 19 n.16 (1968); Accord, Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977)(one may be punitively confined "only after the state has complied with the constitutional guarantees traditionally associated with criminal prosecutions.")

## II. THE COURTS' POWER TO HEAR, DECIDE AND GRANT MOVANT'S MOTION

In that his MRC establishes movant to be imprisoned pursuant to judgments of conviction and ~~sentencing~~ sentencing orders that are invalid as to him (see Exhibit C herewith, incorporated by reference), and the WCC remanded him to imprisonment by void orders (where there was no lawful authority upon which to imprison him), such confinement must be remedied. A judgment or order is void where a court assumes a mode of procedure it could not lawfully adopt or it had no power to enter the order or it had no personal jurisdiction over the person. Singh v. Mooney, 261 Va. 48, 52 (2001). Judgments that are void "may be attacked in any court at any time, directly or collaterally..." Rook v. Rook, 233 Va. 92, 95 (1987). One imprisoned pursuant to a void order may be discharged by habeas corpus at common law. Ex Parte Rollins, 80 Va. 314, 316-17 (1885). Or he may proceed by motion for relief in the nature thereof. VDOC v. Crowley, 227 Va. 254, 261-62 (1984).

A constitution's suspension clause, like that of Va. Constitution Article I § 9, gives courts full common law scope to grant writs of habeas corpus, which the legislature may not curtail without offending said provision. See, Fay v. Noia, 372 U.S. 391, 405-406. Movant clearly charges his imprisonment to be illegal and seeks relief at common law of immediate release, as is his fundamental right.[1] Accord, his rights as set out in §§ I(C), (a)-(d). "Under the common law, the purpose and scope of the writ of habeas corpus is to test the legality of a prisoner's detention." The writ is available... where the release of the prisoner from his immediate detention will follow as a result of an order in his favor." Va. Parole Bd. v. Wilkins, 255 Va. 419, 420-21 (1998). "If imprisonment cannot be shown to conform with the fundamental requirements of the law the individual is entitled to his immediate release." Fay v. Noia, 372 U.S. at 402. At common law the writ of habeas corpus is to be kept sufficiently elastic so that court may... deal ~~with~~ effectively with any and all forms of illegal restraint." Price v. Johnston, 334 U.S. 266, 283 (1948). "The rigidity which is appropriate to ordinary jurisdictional doctrines has not been applied to this writ." Id. "The very nature of the writ demands that it be administered with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected." Hensley v. Municipal County, 411 U.S. 345, 350 (1973). It "cut[s] through barriers of form and procedural mazes" and demands "speed, flexibility and simplicity." Id.

"Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." *Sanders v. U.S.*, 373 U.S. 1, 8 (1963). "[G]overnment is always to be accountable to the judiciary for a man's imprisonment." *Id.*

Overall, courts must liberally construe pro se pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Furthermore, "a pro se litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (1984).

Where movant has never been convicted of a crime and has been imprisoned with no charges since 1990 and where the WCC remanded him to unlawful imprisonment in absence of lawful authority, pursuant to a void remand orders, and in connection with criminal proceedings in the WCC in which it had no personal jurisdiction over movant, he is clearly unlawfully confined, in multiple violation of his rights and subject to false criminal stigma and impeachment as a witness on other WCC criminal proceedings, he must be discharged.

## III    CONCLUSION

As the foregoing facts and law establish, the WCC clerk's office has a ministerial duty to file movant's MRC, the WCC with an appropriate judge presiding has a ministerial duty to hear and decide said MRC forthwith and to relieve him of his illegal imprisonment. Alternatively, this Appeals Court should declare the WCC's orders remanding him to imprisonment void, his imprisonment illegal and order his immediate release from confinement.

Movant believes this matter can be decided on the record without need of an ore tenus hearing.

THEREFORE, this Honorable Court of Appeals should grant movant a writ of mandamus 1) directing the WCC clerk's office to file his MRC as an independent civil proceeding, 2) directing the WCC to promptly hear and decide the said MRC, and 3) directing the WCC to grant movant's immediate release from imprisonment, or this Court of Appeals should itself grant movant immediate release from imprisonment by writ of habeas corpus or relief in the nature thereof.

Respectfully submitted,

Olando Lee Trent (wrongfully confined as Kevin Johnson).

*c/o* to: Kevin Johnson, No. 185492, Red Onion State Prison, P.O. Box 1900, Pound, Va. 24279

Sworn to and signed before me on this 28th day of November 2009.

Notary Public
My commission expires: 12-31-2012

COMMONWEALTH OF VIRGINIA
TRACY GILMORE
NOTARY PUBLIC
REG. #7171757
MY COMMISSION
EXPIRES
12/31/2012

7

Commonwealth of Virginia :
County of Wise :

### AFFIDAVIT

OLANDO LEE TRENT, under oath states as follows :

1. I am the person who was brought before this court on December 8, 2008 and charged as the defendant in this case of Commonwealth of Virginia v. Kevin Johnson, Case No. FOB-68B.

2. The information contained in this affidavit is based on personal knowledge and admissions made by various agents and employees of the Commonwealth, including in judicial proceedings, including Assistant Attorney General Banci Enga Tewolde, Manager of legal services for the Virginia's Department of Corrections (VADOC) Wendy K. Brown, VADOC Counselors, Floydette McCoy, A. Duncan, and others.

3. My name and identity is Olanda Lee Trent. I was born October 3, 1971 to my parents Lee Royal Trent III and Helena Lawson Trent at the Richmond Memorial Hospital in Richmond, Virginia. See Attachment I ( a true copy of my birth certificate). My name/identity is not Kevin Johnson.

4. During April 1990 I was misidentified to Richmond City police as Kevin Johnson, by a civilian bystander on a dark street who was under duress, and mistook me for an actual person named Kevin Johnson. The actual Kevin Johnson was sought by said police as a suspect in various crimes in the city of Richmond, but no accurate description or positive identification had been obtained by said police of the actual Kevin Johnson.

5. Subsequently, on June 4, 1990 I was falsely arrested by the same Richmond police for whom I'd been previously misidentified, and confined in the Richmond City Jail ("RCJ") under the false name and identity of Kevin Johnson, and pursuant to criminal warrants and indictments which were issued by magistrates and grand juries against the actual Kevin Johnson and not against me.

6. I was not then and have never been charged with any written nor other criminal offense; nor been served with any such charges nor process ( summonses nor capiases) for any crimes in any criminal proceeding outside of Wise County, Virginia. I have also never been named as a defendant nor privy to any defendant in any such criminal proceedings.

7. I have also never voluntarily nor knowingly waived formal charges nor service of process in any criminal proceedings. I have also never been named as a defendant nor privy to any defendant in any such criminal proceedings.

8. Both to the arresting police in 1990, and to my jail and prison custodians since, I have persistantly protested that I am not Kevin Johnson, but am Olanda Lee Trent. These protestations have always been disregarded or evaded by said police and custodians despite that I have produced various records and blood relatives and witnesses to corroborate my actual name and identity.

9. Consequently, while I was confined in the RCJ from June 4, 1990 through June 1991, I refused to answer to or acknowledge the name Kevin Johnson, with the result that I was denied visits from friends and relatives and not allowed to send or receive mail, because jail officials refused to address me by or to acknowledge my actual name.

10. Prior to, during and since the time that I was confined at the RCJ, there were other individuals confined at the jail whose names were

1

EXHIBIT I

also Kevin Johnson, or who had similar names.

11. During June 1991 RCJ classification and other officials were supposedly conducting investigations into my persistent complaints of being held in jail with no charges and under someone else's name and identity. At that point various criminal charges, convictions and sentences which were adjudicated against one or more persons named Kevin Johnson, who posed as a Kevin Johnson, or who had similar names, were falsely imputed to me. I, however, was not named, was never arrested nor served with any criminal charges nor process, did not waive any such arrest nor services, and did not voluntarily appear nor participate in any of those proceedings, nor was I the person charged in any of those proceedings.

12. During the same month I was transferred from the RCJ to the VDOC still under the name Kevin Johnson, and was assigned prisoner # 185492. I have since remained confined to the VDOC.

13. Just as occurred in the RCJ, throughout my VDOC confinement VDOC officials have refused to formally identify me by my actual name and identity (viz, Olando Lee Trent), and forbid me from communicating with anyone by mail using my actual name, including the courts and prison officials. When I have tried to correspond using my actual name, the mail is not processed or delivered. Mail sent to me in my actual name is returned to the senders with the indication that there is noone housed in the VDOC by the name Olando Lee Trent. VDOC officials justify this by claiming that I was sentenced to prison under the name Kevin Johnson, although I was not, and therefore this is the only name they will recognize me by. I have therefore had to identify myself by the name Kevin Johnson in all communications with the courts and otherwise during my years of VDOC confinement.

14. Due to my years of persistence in trying to assert and prove my actual identity to my detainers, VDOC officials have amassed a great deal of records which they acknowledge prove my ~~actual~~ actual name and identity to be Olando Lee Trent, yet they refuse to formally recognize my actual name as anything but an alias, because to formally acknowledge it would automatically impugn the legitimacy of my imprisonment and the fact that I ~~has~~ had never been charged with any of the crimes by warrant, indictment or otherwise in any of the adjudications falsely imputed to me under the name Kevin Johnson, and that those adjudications were made against someone else who answers to the name Kevin Johnson and not against me.

15. Over my years of confinement I have received numerous written admissions from VDOC officials, (e.g. prison counselors and records keeping officials), admitting that my name and identity is not Kevin Johnson, that I and Kevin Johnson, against whom the prior adjudications were made and under which I have been and remain imprisoned, are not one and the same person, and that I am being held in prison upon criminal adjudications that did not name or involve me.

16. In an unrelated federal civil action brought by me under 42 U.S.C. § 1983 for unconstitutional use of excessive force and denied medical care, (which was initially dismissed, was appealed by me and reversed, remanded and now set for jury trial), I attempted to raise the facts asserted herein on an independent motion to vacate. In that case and on that motion Assistant Attorney General Banci Tewolde conceded the following specific facts and conclusions as true:

2

(a) "that the person who is incarcerated within the Virginia Department of Corrections (VDOC) as Kevin Johnson, #185442, ... is being held in prison custody based upon criminal adjudications which he was not a party nor privy to, which proceedings he never appeared or participated in as a party defendant, and which proceedings he had nothing to do with;"
(b) "that the person who is incarcerated within the VDOC as Kevin Johnson, #185442, ... has never been charged with, nor served with written notice of, nor served with process (capias or summons) upon any of the crimes for which he has been or is being held in prison custody;"
(c) "that the plaintiff herein cannot be bound by any criminal judgments of conviction entered in any prior criminal proceedings in which he was not named as a party or privy to a party thereto. see, Richards v. Jefferson County, 517 U.S. 793, 797 n. 4, 798, 800 n. 5 (1996);"
(d) "the person who is incarcerated within the VDOC as Kevin Johnson, #185442, has at all times been and continues to be subjected to unlawful detention pursuant to criminal judgments that are void ab initio as to him in violation of the 4th Amendment, and that the VDOC is without lawful authority to continue to retain him in prison custody;"
(e) "that these" void judgments [under which I am confined are] without legal effect and invalid as to "me, and "may be challenged anytime, anywhere, by anyone and in any manner, directly or collaterally...."

17. The motion was not decided on the merits in that case, however, because the federal court found it did not have jurisdiction to decide the motion based upon the nature of the claims before it. see, Attachment II.

18. Attached hereto as Enclosure A is as summary printout of the criminal convictions and sentences addressed herein under which I am being unlawfully detained in prison custody. Attached as Enclosure B are copies of the judgments of convictions and sentencing orders from the Richmond City Circuit and General District Courts which were wrongfully imputed to me upon my VDOC confinement in June 1991 and while I was confined in the RCJ.

19. The total sentences imputed falsely to me upon which I am being unlawfully held in prison custody total single life, 43 years, 13 months and 20 days. These sentences include 18 years and 9 months imputed to me by the Mecklenburg County Circuit Court in 1995 and 1996 in criminal proceedings which I was also not named as a party or privy to, was never served with any written criminal charges nor process related to, did not voluntarily appear nor waive personal service of process in, and did not participate in the trial of.

20. I have been prevented from bringing these facts before a court prior to 2008 due to jail and prison officials denying me access to needed legal research resources through which I would have learned sooner how, and upon what legal grounds, to challenge my unlawful confinement, and because of their refusing to permit me to correspond with and identify myself to the courts by my actual name and identity, and my only recently being able to obtain copy of my birth certificate with which to prove my actual name

3

and identity to the courts.

21. I have never petitioned any court for nor been granted any legal name change under Va. Code § 8.01-217, to change my name from Olando Lee Trent to Kevin Johnson. I also have never been charged, tried nor convicted, nor alleged to have been, of unlawfully changing my name under Va. Code § 18.2-504.1.

22. The name Kevin Johnson is not a name that I have ever willfully or voluntarily assumed, and is not an alias of mine. I was never known by this name to anyone before police imputed it falsely to me upon my false arrest in 1990. Jail and prison officials have forced me to be identified as Kevin Johnson.

23. The record numbers, dates of entry of the judgments of conviction and sentencing orders, and sentences imposed in the Mecklenburg County Circuit Court which were wrongfully imputed to me as indicated in ¶ 19 above, are: (a) CR94-232-00, September 5, 1995, eight years; and (b) CR95-343-00 through CR95-343-02, August 22, 1996, five years, three months and six months. All of these case were styled Commonwealth of Virginia v. Kevin Johnson.

24. All of the foregoing facts have been conceded as true by Assistant Attorney General Banci Tewolde before the Richmond City Circuit Court. I would have been discharged from prison confinement during (after 2008 upon Tewolde's concessions, but for VDOC officials', obstructing me from litigating and receiving mail in my actual name, and thereby subjecting me to extrinsic fraud.

I swear under Va. Code § 8.01-280 that I believe the foregoing facts to be true.

_7-c l 2_

Olando Lee Trent

4

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* Thursday *the* 6th

*day of* May, 2010.

CORRECTIONAL

MAY 1 0 2010

LITIGATION

In Re: Lonnie M. Gholson and Olando Lee Trent,                                          Petitioners.

Record No. 2710-09-3

Upon a Petition for Writ of Mandamus

Before Senior Judges Willis, Annunziata and Bumgardner

Lonnie M. Gholson and Orlando Lee Trent[1] have filed a petition for writ of mandamus. They ask this Court to require respondents to file certain documents and to hear and decide certain matters in conjunction with a pending criminal proceeding involving Gholson.

Trent claims that he is wrongly confined, that his alleged illegal detention should be decided within the context of Gholson's criminal proceeding, and that the circuit court needs to bring him to court to testify concerning the inadequacy of legal research assistance available to prisoners at Red Onion State Prison. Trent has no standing to bring these claims in the context of Gholson's criminal proceeding. See Duke Power Co. v. Carolina Envtl. Study Group, 438 U.S. 59, 72 (1978).

Gholson claims that Trent should be brought before the circuit court to testify in Gholson's criminal proceeding concerning the inadequacy of legal research assistance at Red Onion. However, the attachments and exhibits filed by Gholson in this Court fail to demonstrate that he requested a subpoena in the circuit court as required by Rule 3A:12(a). Gholson provides a copy of an affidavit, dated June 29, 2009, concerning the alleged need for Trent's appearance at Gholson's criminal proceeding. In addition, "Enclosure A," attached to the petition for a writ of mandamus, is a July 1, 2009 letter from

---

[1] Trent was convicted of first-degree murder and other offenses in 1991 under the name "Kevin Johnson."

Trent concerning his "Motion for Discharge From Imprisonment." Attached to this letter is another letter from Gholson in which he again alleges the need for Trent's appearance at Gholson's criminal proceeding. Neither of these documents, in the form and/or context presented, represents a request for subpoena as contemplated in Rule 3A:12(a). As such, Gholson has not demonstrated that he is entitled to the writ of mandamus.

For the reasons stated, we dismiss the petition.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

-2-

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* Monday        *the*   10th

*day of*   May, 2010.

CORRECTIONAL

MAY 1 2 2010

In Re:  Olando Lee Trent,                                                        Petitioner.

LITIGATION

Record No. 2711-09-3

Upon a Petition for Writ of Mandamus

Before Senior Judges Willis, Annunziata and Bumgardner

This petition for writ of mandamus is dismissed for the following reason:

Petitioner seeks a writ of mandamus directing respondents to file a "Motion for Release from Confinement" and to hear and decide the motion.

In the motion petitioner filed with the trial court, he states, "I would like to have my said January 29, 2009 Motion to Vacate (MTV) reconsidered as a Motion for Release from Confinement (MRC) . . . ." In the motion to vacate, petitioner alleges that his 1991 convictions are void.

Code § 17.1-404 provides that the Court of Appeals may issue a writ of mandamus only "in such cases over which the court would have appellate jurisdiction . . . ." See also Wright v. White, 17 Va. App. 42, 43, 434 S.E.2d 693, 694 (1993). Petitioner has not alleged that this petition arises from a case over which this Court has appellate jurisdiction. See Commonwealth v. Southerly, 262 Va. 294, 299 551 S.E.2d 650, 653 (2001) (Supreme Court of Virginia has appellate jurisdiction over cases challenging convictions on the basis of being void).

Therefore, the Court of Appeals lacks jurisdiction to entertain the petition for writ of mandamus.

A Copy,
Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk